WATSON, Justice.*
Marilyn Lee Hampton and Timothy George Baldwin were indicted by a grand jury for the first degree murder of Mary James Peters on April 4, 1978, in violation of LSA-R.S. 14:30. The trials were severed and Ms. Hampton was found guilty. After the sentencing portion of her trial, the jury unanimously recommended that she be sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant Hampton has appealed, relying on six assignments of error.
FACTS
Marilyn Hampton and her three children resided for a while with Baldwin’s family in Cleveland, Ohio. Subsequently, Marilyn Hampton and Timothy Baldwin entered into a relationship and left the Baldwin home together in the company of William Odell Jones and Marilyn’s children. The group traveled to Florida and leased a 1978 black Ford van in Tampa. After leaving that state, they rented a cabin in Holmes County State Park, near Jackson, Mississippi. On April 4,1978, Baldwin and Hampton left Jones and the children at the cabin and drove to West Monroe in the van. The park manager, Mike Varnado, knew Baldwin drove away with an adult woman but could not identify her. He did see the three children and Jones at the park later that day. Jones knew that Marilyn and Tim intended to rob Mary James Peters, a former neighbor of the Baldwins, and use her money to settle down. Ms. Peters was legally blind but able to function on her own. A small woman, she was 5'1" tall and weighed 110 pounds. Although 85 years old, she lived alone. She kept her doors bolted and did not allow strangers to enter. There were three locks on the main entrance door. According to her daughter, Theresa Baragona, she was fond of Rita Baldwin but afraid of her husband, Tim. According to Jones, Marilyn was also afraid of him.
After arriving in West Monroe, Tim and Marilyn visited his daughter Michelle. They were at her apartment until about 8:00 P.M. A dark van was observed near the Peters’ home that night, sometime after 8:00 P.M. It remained parked for approximately two hours. During that time neighbors, Paul Rice and Robert Grisham, observed that someone or something in the house was apparently being beaten by a white male. They did not interfere. Subsequently, a male and a female were seen leaving the house. Rice could not swear Marilyn Hampton was the female but testified to a strong similarity. To Rice and Grisham, the woman appeared to be carrying something in her arms.
Ms. Peters was discovered the next day about 11:30 A.M. in a semi-comatose condition by Elsie May Brice, an employee of the Ouachita Council on Aging, Meals on Wheels. Ms. Peters’ face was black and bruised. She was lying on the kitchen floor moving her hands. A broken iron skillet, a telephone, a T.V. set and other items had been used to inflict the wounds. Ms. Peters could not communicate rationally, but at *342 tempted to defend herself against the police officers who were called to the scene. There were no signs of a forcible entry into the house. Ms. Peters died the following day, April 6, as the result of brain damage from the blows to her head inflicted in the severe beating.
Marilyn and Tim returned to Holmes Park around noon on April 5. Marilyn told Jones that “ . . . the lady [Ms. Peters] was still kicking,” when they left her. Marilyn Hampton and Timothy Baldwin were arrested in El Dorado, Arkansas, on April 8. Bonds and certificates of deposit belonging to Ms. Peters were seized from their van.
Ms. Peters did not smoke, but a package of Pall Mall cigarettes was found at the scene of the crime. That was Marilyn Hampton’s brand.
ASSIGNMENT OF ERROR NUMBER ONE
It is contended that there was insufficient evidence at the preliminary hearing to establish probable cause to charge Marilyn Hampton with first degree murder or a lesser included offense as required by LSA-C.Cr.P. art. 296.
Since Marilyn Hampton was found guilty by a jury, the question of probable cause to hold her for trial is now moot. State v. Luckett, 327 So.2d 365 (La., 1976).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial court should have granted a change of venue. LSA-C.Cr.P. art. 622.
Although, like all murders, this was an important news story in the West Monroe area, it did not receive any special attention from the media. Police Chief Mitchell, in a statement taped for television, said the offense was a “savage” one and a television reporter described it as a “brutal slaying”, both accurate descriptions. The coverage of the trial was termed average for a murder. Some of those called to testify at the hearing were completely unaware of the crime and others were unfamiliar with the details. Only one witness, Cheryl Yarb-rough, testified that the community thought those indicted were guilty. Ledvic Herlevic, who had known Ms. Peters all of her life and took her to church every Sunday, was dubious about defendant getting a fair trial in Ouachita Parish. However, even Herlevic thought those who had not known the victim personally might not have an opinion in the matter. Another witness, J. Eugene Spatafora, who had known Ms. Peters in the past, did not know of any community opinion in the matter and had not discussed it much.
Defendant did not prove that a fair trial in the community was impossible, and the trial court did not abuse its discretion in denying the change of venue. State v. Matthews, 354 So.2d 552 (La., 1978).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
Defendant contends that the trial court erred in allowing hearsay testimony by State witness, Paul Rice. Rice said that after the man and woman emerging from the Peters’ home saw him and his companion, the woman turned and said “ . we’ll see you later, Mrs. Peters, . . . ” (Tr. 310). The statement was a part of the res gestae since it occurred as the defendant was leaving the scene of the murder, and shows an attempt on her part to prove that Ms. Peters was still alive at the time. LSA-R.S. 15:448. Further, the statement was not admitted into evidence as proof of its content, but only to show that the woman leaving the house turned and addressed a remark as she left. The truth of the statement was not at issue, but it clarified the sex and . complicity of one of the two people leaving the Peters’ premises. State v. Drew, 360 So.2d 500 (La., 1978).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FOUR
It is contended that the trial court erred in allowing hearsay testimony by *343 Jones about statements allegedly made by the defendant. Jones said Marilyn Hampton was present in the van when Baldwin discussed the robbery and possible murder of Ms. Peters. There was no testimony by Jones about any statements made by Marilyn Hampton before the crime. Her presence at the conversations shows that she was aware of the nature of the trip to West Monroe and had the requisite specific intent to commit the murder. LSA-R.S. 15:446. After the crime, Marilyn made a voluntary statement to Jones that Ms. Peters was left still kicking. This free admission to her complicity in the crime was proper evidence. LSA-R.S. 15:449. An admission is a recognized exception to the hearsay rule. State v. Walker, 344 So.2d 990 (La., 1977).
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FIVE
It is contended that the trial court erred in allowing into evidence State exhibit S-16B, a small color photograph of the victim which established her identity and the cause of death. The photograph was admissible. State v. Trass, 347 So.2d 1156 (La., 1977). It is unpleasant, but not gruesome, and its probative value outweighs any prejudicial effect. Another photograph, S-16G was excluded as repetitious.
This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SIX
Defendant contends that the jury verdict was contrary to the law and the evidence, and that the trial court erred in denying a timely motion for new trial. At the hearing on the motion it was argued that the only testimony to connect Marilyn Hampton with the crime was that of Jones. This contention is unfounded. There was ample other evidence to establish beyond a reasonable doubt that Marilyn Hampton was a participant in the robbery and murder. Marilyn Hampton and Timothy Baldwin left Michelle Baldwin’s apartment together around 8:00 P.M. the evening of the murder. They left together in the van which was subsequently seen parked in front of the Peters’ home. There is no reasonable doubt that the woman Rice and Gresham saw leaving the Peters’ home around 10:00 P.M. was Marilyn Hampton. The two were still together four days later in Arkansas when they were discovered with the fruits of the crime. Marilyn Hampton was a principal in the crime, and was guilty along with Baldwin of the murder. LSA-R.S. 14:24.
This assignment of error lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.

 Honorable RICHARD GAUTHIER participated in this decision as Associate Justice Ad Hoc.