639 So.2d 395 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Cebren STOKES, Defendant-Appellant.
No. 26003-KA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*396 Ronald E. Raney and S. Curtis Mitchell, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul Carmouche, Dist. Atty., Shreveport, W. Stanley Lockard, Asst. Dist. Atty., Shreveport, for appellee.
Before NORRIS, VICTORY and WILLIAMS, JJ.
WILLIAMS, Judge.
The defendant, Cebren Stokes, was indicted by a grand jury for second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged. He was sentenced to serve the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
On appeal, defendant relies on twelve assignments of error for reversal of his conviction and sentence. Since the defendant has briefed only five of these assignments, the remaining seven assignments are deemed abandoned. U.R.C.A. Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990). Further, since we find no merit to any of the assignments briefed, we affirm the defendant's conviction and sentence.

FACTS
On May 10, 1991, Danta Harrison, Vidale Tasby, Joshua Earl Williams, and the defendant traveled in Joshua Williams' car to the Cedar Grove area, in Shreveport, Louisiana, to find someone to rob of cocaine and money. Defendant asked Carl Giounes where he could purchase one-half ounce of cocaine. In response, Giounes directed the defendant to the victim, James Williams, Jr.
Shortly thereafter, defendant and Tasby went into a house with the victim. After he was robbed, the victim was shot and killed. Witnesses identified Tasby as the shooter. The witnesses also saw the defendant searching through the victim's pocket shortly before defendant ran out of the house carrying a bag.

DISCUSSION

ASSIGNMENT OF ERROR NOS. 2 & 4:
By these assignments, the defendant challenges the sufficiency of the evidence presented at trial to convict him of second degree murder. Defendant argues there was no evidence presented to prove he had prior knowledge of his companion's plan to rob the victim. He also questions the credibility of the state's witnesses, arguing there were lies and inconsistencies in their testimony.
*397 Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La. App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988). This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-La. Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir. 1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La. App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
The state can prove a violation of LSA-R.S. 14:30.1 by showing the defendant killed a human being while engaged in the perpetration or attempted perpetration of armed robbery, a violation of LSA-R.S. 14:64. The state presented the testimony of several witnesses to prove that defendant was a principal to the crime of second degree murder, a crime which was actually perpetrated by Vidale Tasby.
Danta Harrison testified that on the night of the homicide, he and Vidale Tasby formulated the plan to rob someone of cocaine, money or whatever they could get. Shortly thereafter, they located the defendant and asked him whether he knew of anyone they could rob. Harrison testified the defendant responded that he knew of someone to rob and he had a friend, Joshua Williams, who owned a car. While the four men were traveling in Williams' car to the Cedar Grove area, Williams asked for one of their weapons. According to Harrison, the four men met Giounes, who directed them to the victim. Defendant and Tasby accompanied the victim into the house. After the first gunshot, the defendant ran back to the car carrying a bag and Tasby fired a second shot. Harrison testified the four men drove to Joshua Williams' home and divided the crack cocaine they had taken from the victim.
Carl Giounes testified defendant talked to him while defendant was in a car with three other men. Defendant asked Giounes whether he knew where they could get one-half ounce of crack cocaine. Giounes directed the defendant to the victim. Shortly thereafter, Giounes heard a shot and ran to the door of the house. Tasby told the victim to "drop it." Defendant stated the victim wasn't going "to drop his stuff." Giounes testified he could see that the victim had been shot in the arm and defendant "had him from behind and was going in his pocket." Defendant had the drugs in one hand and was trying to get the money out of the victim's pocket with the other hand.
Will Ford, the victim's friend, corroborated Giounes' testimony that the victim went to the door of the home with defendant and another man. He further testified that he saw the other man shoot the victim and one of the men going through the victim's pocket after the victim was shot.
Viewing this evidence in the light most favorable to the prosecution, the testimony shows that defendant actively participated in the planning of the robbery and directed the co-conspirators to the victim. Defendant sought out the victim, went through his pockets after he had been shot, made no effort to stop or prevent any further shooting and actually shared in the contraband taken from the victim. We conclude that the evidence *398 establishes beyond a reasonable doubt that the defendant was guilty of armed robbery, and that the victim was killed during the commission of this armed robbery. Consequently, defendant was guilty of second degree murder under LSA-R.S. 14:30.1(A)(2).
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 5:
By this assignment, the defendant contends the trial court erred in allowing photographs of the victim to be introduced into evidence over his objection. He argues the photographs in question depicted the victim with a surgical opening in the chest which had been sewn shut by doctors after unsuccessful life-saving efforts.
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted, are generally admissible. State v. Dixon, 620 So.2d 904 (La.App. 1st Cir.1993).
The test for admissibility of gruesome photographs is whether their probative value outweighs the possible prejudice which may result from their display to the jury. State v. Hampton, 384 So.2d 340 (La.1980); State v. Matthews, 354 So.2d 552 (La.1978); State v. Womack, 592 So.2d 872 (La.App. 2d Cir. 1991), writ denied, 600 So.2d 675 (La.1992).
An examination of the photographs show that they depict the victim after the autopsy was performed. These photographs cannot be characterized as gruesome. The photographs depict a small, cleaned entrance wound. Moreover, Dr. George A. McCormick, II, the forensic pathologist and parish coroner, used the photographs to explain the angle of the bullet's entrance and the position of the victim at the time he was shot. These issues were relevant to corroborate the witnesses' testimony that the victim was on his knees or on the ground when the last shot was fired.
Accordingly, we conclude the photographs were properly admitted into evidence over the defendant's objection.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 9:
By this assignment, defendant contends the trial court erroneously allowed the state to elicit hearsay testimony from one of its witnesses. He also complains that the state was allowed to elicit opinion testimony from the witness.
During the state's case-in-chief, the prosecutor asked the following question of Detective Michael Price of the Shreveport Police Department:
Now if I might, do you recollect what he [Brayden] told you about when the gun was given to Viadele [sic] who was there?
Defense counsel objected to the question as requiring a response that was hearsay. The trial court overruled the objection and the witness responded:
I believe all of them were present, Cebren Stokes, Viadele [Vidale] Tasby, Josh Williams and Chamelle.
At the time of the objection, the state argued the testimony sought from the witness was admissible for impeachment purposes. We agree.
On direct examination, Tyrone Brayden denied giving Vidale Tasby the murder weapon in the presence of the other three men. The state successfully impeached Brayden's testimony by questioning him concerning a prior recorded statement given to police officers during which time he indicated that all four men were present when he gave Tasby the murder weapon. Although Brayden admitted giving the officer the statement, he insisted he was afraid and pressured into making the earlier statement.
Detective Price's testimony was elicited for impeachment purposes and to show that, contrary to Brayden's previous testimony, Brayden was not under pressure or duress when he made the statement. The statement was not hearsay because it was testimony regarding a prior inconsistent statement not offered to prove the truth of the matter asserted, but to impeach the witness by showing he had made the previous statement and the manner in which it was made. See LSA-C.E. Arts. 607(D)(2), 801(C); State v. Bairnsfather, 591 So.2d 686 (La.1991). Moreover, the trial *399 court admonished the jury the statement could not be used as substantive evidence of guilt. We find no error in this ruling.
Defendant also argues Detective Price improperly gave opinion evidence when he testified as to what he believed Brayden meant in his recorded statement when he used the word "they."
We have reviewed the relevant portion of the transcript and we disagree with defendant's assertion that LSA-C.E. Art. 701 was violated. Although the prosecutor initially asked for the officer's opinion, he rephrased the question and deleted the wording which would have required the witness to render an "opinion." In fact, the officer testified that he questioned Brayden on the word "they" as used in his statement, and Brayden mentioned the defendant.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 12:
By this assignment, defendant challenges as error the trial court's refusal to grant his request for a directed verdict or a new trial based on the state's failure to prove venue.
Relying on State v. Powell, 598 So.2d 454 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992), defendant contends the state failed to prove venue. He argues the location of the crime was given only as 479 East 73rd Street and there was no testimony to prove this address is in Shreveport, Louisiana.
LSA-C.Cr.P. Art. 615 provides:
Improper venue shall be raised in advance of trial by motion to quash, and shall be tried by the judge alone. Venue shall not be considered an essential element to be proven by the state at trial, rather it shall be a jurisdictional matter to be proven by the state by a preponderance of the evidence and decided by the court in advance of trial.
The state is not required to prove venue beyond a reasonable doubt. Further, a trial court may take judicial notice that a recognizable location is inside a certain parish for venue purposes, even though the parish is not specifically mentioned by name. State v. Powell, supra.
Detective Price testified that he is a member of the Shreveport Police Department and he investigated this killing which occurred in the Cedar Grove area. Carl Giounes testified he lives in the area of the murder, specifically at 478 Marx Street, 71106. He described the location of his home as "off of Jewella in the Cedar Grove area of the city."
This evidence is sufficient to prove that venue was in Shreveport, Caddo Parish, Louisiana, by the preponderance of the evidence.
This assignment is meritless.

CONCLUSION
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.