714 So.2d 87 (1998)
STATE of Louisiana, Appellee,
v.
Joseph Lee JACKSON, Appellant.
No. 30473-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
*89 Louisiana Appellate Project by Richard J. Gallot, Jr., Ruston, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Hugo A. Holland, Bruce Dorris, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
Before HIGHTOWER, BROWN and PEATROSS, JJ.
*90 PEATROSS, Judge.
Charged with two counts of second degree murder, LSA-R.S. 14:30.1, Joseph Lee Jackson, Defendant, was found guilty as charged by a jury. The trial judge sentenced Defendant to two consecutive life sentences without benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence urging fourteen assignments of error. For the following reasons, we affirm the convictions and sentences.

FACTS
On June 9, 1994, Randall Glenn Thomas, Antonio Jackson and Defendant planned the armed robbery of Burford's Grocery Store located in Keithville. The next morning, as David and Glenn Lacobee, the proprietors, were opening their store, Thomas, Jackson and Defendant entered the store demanding money. As Jackson and Defendant took Glenn to the back of the store to open the safe, David and Thomas began exchanging gunfire. David was fatally wounded. Thomas, who was hit in the abdomen by one of David's shots, ran from the store and drove away in the robbers' vehicle. While not clear which one, either Jackson or Defendant shot and killed Glenn who was kneeling by the safe near the rear of the store. Defendant removed approximately $400 in change from the safe. Helen Lacobee, David's wife and Glenn's mother, hid in a small office inside the store during the robbery and telephoned the "911" emergency response line.
When Jackson and Defendant left the store, they discovered that Thomas had already fled in his vehicle. The two men ran through some nearby woods to a highway where they hitched a ride to a bus stop and caught a bus home. Some ten days later, an anonymous caller led investigators from the Caddo Parish Sheriff's Office to Thomas, Jackson and Defendant. After officers visited the residence of Martha Jackson (Defendant's sister and Antonio's mother), the three men agreed to go to the Sheriff's Department to discuss the case. Each man confessed to participating in the robbery. Thomas also admitted shooting David Lacobee, but both Jackson and Defendant denied shooting Glenn Lacobee. The State charged all three defendants with the homicides. In State v. Thomas, 28,790 (La.App. 2d Cir. 10/30/96), 683 So.2d 1272, writ denied, 96-2844 (La.4/25/97), 692 So.2d 1081, this court affirmed Randy Thomas' conviction, pursuant to his guilty plea, to one count of first degree murder and one count of second degree murder. In State v. Jackson, 29,470 (La.App. 2d Cir. 8/20/97), 707 So.2d 990, this court affirmed Antonio Jackson's convictions for second degree murder and manslaughter.
DISCUSSION
Assignment of error No. 3: The evidence presented by the State of Louisiana, when viewed in a light most favorable to the State, does not reasonably permit a finding of guilty of the offense of second degree murder.
Assignment of error No. 10: The trial court committed error when Defendant was found guilty of the second degree murder of Glenn Lacobee, due to the fact the co-Defendant had been found guilty of manslaughter of the same individual.
Assignment of error No. 11: The trial court committed reversible error denying Defendant's Motion for New Trial.
Assignment of error No. 12: The trial court committed reversible error when it accepted a verdict contrary to the law and the evidence that the prosecution failed to prove beyond a reasonable doubt.
Assignment of error No. 13: The trial court committed reversible error in denying Defendant's Motion for Post verdict Judgment of Acquittal.
In these assignments of error, Defendant contends the evidence was insufficient to support the convictions of second degree murder. Specifically, he alleges that the lack of physical evidence linking him to the commission of the crimes should exonerate him. Since these assignments of error all deal with the issue of sufficiency of evidence, we have consolidated them for discussion purposes.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable *91 to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.), writ denied, 605 So.2d 1089 (1992).
La.C.Cr.P. art. 821 provides that a motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.), writ denied, 604 So.2d 973 (La.1992).
La.C.Cr.P. art. 851(1) provides that the court shall grant a motion for a new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App. 2d Cir. 6/22/94), 639 So.2d 391, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (1993); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
LSA-R.S. 14:30.1, which defines second degree murder, provides, in part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) (a)When the offender is engaged in the perpetration or attempted perpetration of... armed robbery ... even though he has no intent to kill or to inflict great bodily harm.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24.
Defendant confessed in a police statement that he helped plan the robbery of the Burford Grocery Store. He admitted in the confession that he entered the store with Randy Glenn Thomas and Antonio Jackson, that he went to the back of the store where Glenn Lacobee and the safe were located and that he took rolls of coins from the safe. He admitted that he was wearing socks on his hands. Helen Lacobee testified that she witnessed three masked black males armed with guns rob the store. Her husband and son were shot and killed by the robbers during the commission of the robbery.
Nathaniel Robinson testified that, after seeing emergency vehicles headed in the direction of the Lacobees' store, he was flagged down about a mile from the store by Defendant and Jackson, who asked for a ride to a bus stop. Robinson, who knew Defendant when Defendant previously lived in Keithville, testified that he noticed Defendant and Jackson were nervous. He also testified that Jackson, who rode in the cab of the truck, smelled of gunpowder.
The evidence clearly supports the jury's determination of guilt. The evidence, viewed in the light most favorable to the prosecution, establishes that Defendant was a principal to the crime of armed robbery, during which the victims were killed. The evidence, therefore, was legally sufficient for the jury to conclude the State proved beyond a reasonable doubt that Defendant, as a principal, was guilty of the crime of second degree murder committed during the perpetration of an armed robbery. These assignments of error are without merit.
Assignment of error No. 1: The Trial court committed reversible error when it failed to grant the Defendant's Motion to Recuse the Trial Judge.
Defendant filed a Motion to Recuse the Trial Judge and a hearing was held pursuant *92 to that motion, presided by First Judicial District Court Judge John Mosley. Defendant asserts that Judge Eugene W. Bryson, Jr. should have been recused from the case and that Judge Mosley erred in denying the motion to recuse.
At the recusal hearing, Judge Bryson testified that he presided over the jury trial of Defendant's accomplice Antonio Jackson and asserted that the knowledge he gained in that trial would not impair his ability to give Defendant a fair and impartial trial. Judge Bryson also testified that he grew up in the Greenwood area and that he did not know the defendants or the victims other than through the case coming before him. He asserted that he may have been in the grocery store which was the site of the murders on two different occasions. The first was 40 years ago, before the store was named "Burford's" and the second was 18 years earlier during a political campaign. Judge Mosley denied the motion to recuse, stating that no grounds for recusal exist based on Judge Bryson's testimony and the arguments of counsel.
La.C.Cr.P. arts. 671, et seq., provide the grounds and the procedure by which a party may request the recusal of a judge. A trial judge is presumed impartial and the burden is on the defendant to prove otherwise. State v. Edwards, 420 So.2d 663 (La. 1982); State v. Higginbotham, 541 So.2d 348 (La.App. 2d Cir.1989), writ denied, 556 So.2d 28 (La.1990). One seeking to recuse a judge must allege or provide a factual basis for his allegation of bias or prejudice and may not simply make conclusory allegations. State v. Small, 29,137 (La.App. 2d Cir. 4/2/97), 693 So.2d 180.
As noted by Judge Mosley, Defendant failed to allege any factual basis to support the recusal of Judge Bryson. The judge was not acquainted with the victims or Defendant. While La.C.Cr.P. art. 671(A)(5) provides for recusal when a judge "has performed a judicial act in the case in another court," this article is designed for judges who ascend to a higher bench. See State v. Godfrey, 495 So.2d 956 (La.App. 3d Cir.1986), remanded on other grounds, 501 So.2d 221, on remand, 507 So.2d 1252 (1987). Judge Bryson presided over the three related cases in the same court.
Defendant has made no showing that Judge Bryson was in any way prejudiced in the State's favor. No bias was shown on the part of the trial judge and the motion for recusal was properly denied. This assignment of error is without merit.
Assignment of error No. 2: The trial court committed reversible error when it imposed a consecutive sentence rather than concurrent, which sentence constitutes cruel and unusual punishment.
Assignment of error No. 8: The trial court committed reversible error in denying Defendant's Motion to Reconsider Sentence.
Defendant was convicted of two counts of second degree murder and sentenced to consecutive life sentences without benefit. Defendant argues in these assignments of error that the imposition of consecutive life sentences constitutes cruel and unusual punishment and that the sentences should be vacated. Defendant also complains that his co-defendants received lesser sentences. Defendant timely filed a Motion to Reconsider Sentence which, after a hearing, was denied by the trial court.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983). Thus, an appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); State v. Smith, supra; State v. Lanclos, 419 So.2d 475 (La.1982).
Defendant argues that he received a harsher sentence than his co-assailants Antonio Jackson and Randy Thomas. Antonio Jackson, convicted of one count of second degree murder and one count of manslaughter, received consecutive sentences of life and 40 years, respectively. Thomas, who pled *93 guilty to one count each of first degree murder and second degree murder, received concurrent life sentences as part of his plea agreement.
There is no requirement, however, that co-defendants be treated equally by the sentencing judge. State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986); State v. Rogers, 405 So.2d 829 (La.1981). The disparity of sentences between co-defendants is only a factor to be considered along with all other appropriate considerations in evaluating a contention that a sentence is excessive. State v. Quimby, 419 So.2d 951 (La.1982).
The second prong of the appellate analysis concerns constitutional excessiveness. State v. Smith, supra. Defendant asserts that the trial court erred in imposing consecutive terms of incarceration. It is within a trial court's discretion, however, to order sentences to run consecutively rather than concurrently. State v. Coates, 27,287 (La.App. 2d Cir. 9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365; State v. George, 26,867 (La.App. 2d Cir. 4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95). Concurrent sentences arising out of a single cause of conduct are not mandatory, State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 637 So.2d 476 (La.1994), and consecutive sentences under those circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Ortego, 382 So.2d 921 (La.), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). All factors are to be considered. State v. Ortego, supra. These include the gravity or dangerousness of the offense, the viciousness of the crimes and the harm done to the victims. State v. Adams, 493 So.2d 835 (La.App. 2d Cir.), writ denied, 496 So.2d 355 (La.1986); State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986); State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.), writ denied, 435 So.2d 433 (La.1983).
La.C.Cr.P. art. 883 provides that:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run consecutively.
In this case, the trial court provided extensive reasons for sentence that reflect careful consideration of the provisions of La. C.Cr.P. art. 894.1. The trial court stated the facts of the crime, citing that Defendant admitted in his police statement his role in the planning and participation of the armed robbery. The trial court found that the armed robbery, the murder of David Lacobee, and the murder of Glenn Lacobee, were separate events, explaining that the only common occurrence in the events was that the robbery was planned together by the three defendants. The court expressed that it could not devalue the lives of the victims by running Defendant's sentences concurrently.
At the hearing on the motion to reconsider sentence, Defendant requested reconsideration due to his claim that he was not considered as the actual murderer by the police in the Lacobee homicides, and that he had no prior criminal record. The trial court denied the motion and, in a written opinion, cited the factors previously stated at sentencing.
Considering these factors and, in particular, Defendant's apparent disregard for human life, the trial court's decision in this case should remain undisturbed. These assignments of error are without merit.
Assignment of error No. 4: The trial court committed reversible error in denying Defendant's Motion in Limine, wherein the State lost the audio tape of the Defendant's statement and was allowed to read a transcript to the jury and be made part of the record.
At some point in the proceedings leading to the convictions of the defendants in this crime, it was discovered that the audio tape recording of each Defendant's statement had been lost. Defendant in the present *94 case filed a Motion in Limine to prevent the State from using the transcript of the statement without the audio recording as evidence. After a hearing on the issue, the motion was denied by the trial court. Defendant contemporaneously objected to the court's ruling.
This assignment of error challenges the admission of Defendant's transcribed inculpatory statement into evidence, after the corresponding audio tape had been lost. Defendant argues that the recording itself constituted the "best evidence." We note that this issue was previously decided in State v. Jackson, supra, wherein this court stated:
Contrary to defendant's assertions, the best evidence rule does not mandate production of an original taped statement when testimony shows the item has been lost or destroyed and there is no bad faith by the state. La. C.E. arts. 1002, 1004; State v. McDonald, 387 So.2d 1116 (La. 1980), cert. denied, 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980); State v. Hayes, 585 So.2d 619 (La.App. 2d Cir. 1991). Whether the contents correctly reflect the original statement is an issue for the fact-trier. La. C.E. art. 1008.
Here, the uncontroverted evidence at the pre-trial hearing established that the tape had simply been misplaced. Testimony amply demonstrated that an exhaustive search had been conducted without avail and that no wrongdoing or bad faith could be discovered.
Similarly, we are unimpressed with defendant's complaints about claimed inaccuracies and the unverified nature of the tape. Although neither the transcriptionist nor the two investigators directly compared the tape with the completed document, ... Christian confirmed the transcript's accurate recreation of the statement, based upon [a review] conducted approximately two days ... after the interview itself. Transcription occurred the day after the recording had been made, and the transcribing clerk described her careful procedure for reducing such statements to writing. In addition to defendant's failure to specify the inaccuracies claimed, the transcript shows that the few inaudible responses are insignificant. Finally too, in light of the Deputy Christian's testimony concerning defendant's identical admissions made even before the taping occurred, see La. C.E. art. 801D(2)(a), no prejudice has been shown to arise from the duplicative transcript. See La.C.Cr.P. art. 921.
For these same reasons, we conclude that this assignment of error is without merit.
Assignment of error No. 5: The trial court committed reversible error in denying the Defendant's Motion to Suppress a Statement, taken following his arrest, which in the manner taken denied the Defendant his right to due process.
Defendant filed a motion to suppress pursuant to the introduction of inculpatory statements he made to the police. A joint motion to suppress hearing was held as to all three defendants. The trial court denied the motion, issuing a written opinion. Defendant complains of the trial court's denial of his motion to suppress the confession he made to the police on the grounds that the statement was made while he was illegally detained and was, therefore, a violation of his Fourth and Fourteenth Amendment rights to be secure in his person from unreasonable seizure. This issue was exhaustively addressed by this court in State v. Thomas, supra, where it was held that the motion to suppress was properly denied. With Defendant failing to raise any new issue or show further circumstances peculiar to his treatment, we find Thomas dispositive regarding the admissibility of the statement presently before us. This assignment of error is without merit.
Assignment of error No. 6 The trial court committed reversible error in denying Defendant's Motion to Suppress Identification Through Photo Lineup Identification.
Defendant asserts that the photo identification presentation was suggestive because he was the only person in the lineup with a "pig-tail" haircut. The record reveals that the two alleged identifications were made by Lisa Boyd and Hulon Carkeet. Both of these witnesses testified at the motion to suppress. Neither Mr. Carkeet nor Ms. Boyd, however, testified at trial, nor did *95 any witness at trial refer to these identifications. The jury was never made aware of the identifications. These facts fail to disclose any prejudice to Defendant. See La. C.Cr.P. art. 921. This assignment of error is without merit.
Assignment of error No. 7: The trial court committed reversible error in allowing the "911" tape to be introduced into evidence after being sent to the FBI and a local production company to be "cleaned up" despite objection by the Defendant.
Defendant urges the trial court committed manifest error in overruling his objection to playing a "cleaned up" copy of the 911 telephone call made by Helen Lacobee during the commission of the armed robbery and murders of her husband and son. Specifically, Defendant argues that the original 911 tape made by the sheriff's department should have been played as it was available. Defendant does not raise the issue of the authenticity of the original 911 tape, but merely states that the original is required from a plain reading of La. C.E. art. 1002.
At a hearing on the issue held outside of the presence of the jury, Caddo Parish Assistant District Attorney Bruce Dorris testified that when the prosecutors received the tape from the Caddo Parish Sheriff's Office, they noticed that the tape contained "a lot of distortion." The District Attorney's Office sent that original tape to Jim O'Bryan at radio station KWKH to clean up the tape's audio. Dorris testified that he had heard both the original tape and the copy and found them to be identical except that the copy was clearer. Helen Lacobee testified that the audiotape at issue was an accurate reflection of what transpired while she was on the telephone with the 911 operator.
The trial court overruled the defense's objection to the tape's admissibility, citing that Mrs. Lacobee, the person on the tape, had testified outside of the presence of the jury that, in her opinion, it was an accurate copy of the tape. Transcripts of the tape were then passed to the jury and the tape was played for the jurors to hear.
The "best evidence" rule is to be applied sensibly and with reason. State v. Hayes, 585 So.2d 619 (La.App. 2d Cir.1991). Absent a showing of prejudice to the defendant, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Moore, 419 So.2d 963 (La.1982); State v. Gaskin, 412 So.2d 1007 (La.1982); and State v. Coleman, 486 So.2d 995 (La.App. 2d Cir.1986).
To admit demonstrative evidence at trial, the object must be identified, either by testimony that the object is related to the case or by the chain of custody from the time of seizure until presentation at trial. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.), writ denied, 619 So.2d 573 (La.1993); State v. Caston, 583 So.2d 42 (La.App. 2d Cir.1991).
All relevant evidence is generally admissible. La. C.E. art. 402. Relevant evidence is that which tends to show any fact of consequence to the charge. La. C.E. 401. A trial judge is vested with wide discretion in determining relevancy of evidence; his ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981).
Pursuant to La. C.E. art. 1002, to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided by the Code of Criminal Procedure or other legislation. La. C.E. art. 1003 provides an exception to the general rule:
A duplicate is admissible to the same extent as an original unless:
(1) A genuine question is raised as to the authenticity of the original; (2) In the circumstances it would be unfair to admit the duplicate in lieu of the original; or
(3) The original is a testament offered for probate, a contract on which the claim or defense is based, or is otherwise closely related to a controlling issue.
Where the document offered in evidence is a mechanical reproduction of the *96 original, and is its substantial equivalent, it is admissible unless the defendant can show that its content does not accurately reflect the original. State v. Vincent, 338 So.2d 1376 (La.1976); State v. Lewis, 567 So.2d 726 (La.App. 2d Cir.1990), writ denied, 575 So.2d 364 (La.1991). Mrs. Lacobee testified that the tape reflected what occurred during the telephone exchange and Dorris testified that the duplicate tape was identical to the original tape.
Absent further showing, Defendant's argument that the original should be produced in accordance with La. C.E. art. 1002 fails. The trial court found no bad faith on the part of the state. Defendant does not show or suggest bad faith or prejudice. La. C.E. art. 1003 allows a duplicate admissible when there is no question as to the authenticity of the original and it would not be unfair to admit the duplicate in lieu of the original. State v. Joe, 28,198 (La.App. 2d Cir. 7/26/96), 678 So.2d 586. Under these circumstances, a proper foundation was presented for the admissibility of the tape copy and transcript. This assignment of error is without merit.
Assignment of error No. 9: The trial court committed reversible error when it overruled the defense objection to the introduction of photographs into evidence by the State.
Defendant contends that it was reversible error to admit the autopsy photographs of the victims which were introduced, he alleges, to inflame the passions of the jury. The photographs were introduced pursuant to the testimony of Caddo Parish Coroner, Dr. George McCormick. The photographs at issue were taken after the bodies had been cleaned of blood. Dr. McCormick used the photographs to describe the various injuries to the victims and the causes of death. Defense counsel objected to the introduction of both sets of autopsy photographs and the trial judge overruled the objections, noting that he had reviewed the photographs and found them to be proper.
If allegedly gruesome photographs are to be admitted into evidence, their probative value should outweigh their prejudicial effect on the jury. See La. C.E. art. 403; State v. Beason, 26,725 (La.App. 2d Cir. 4/7/95), 653 So.2d 1274. A trial court's ruling in this regard will only be disturbed if the prejudicial effect of the photographs clearly outweighs the probative value. State v. Unger, 362 So.2d 1095 (La.1978); State v. Bryant, 351 So.2d 1188 (La.1977). Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Valentine, 364 So.2d 595 (La.1978); State v. Stokes, 26,003 (La.App. 2d Cir. 6/22/94), 639 So.2d 395.
The photographs were all taken at the autopsy and each one depicts a bullet wound or some other type of wound suffered by the victim. Dr. McCormick used these pictures to explain that injuries suffered by the victims and the cause of each victim's death. The photographs are not bloody and only two pictures unavoidably and partially show the face of a victim in order to depict wounds suffered around the face.
No unfair prejudice resulted from the admittance of these photographs. The photographs were relevant. They were not gruesome and their probative value outweighed any prejudicial effect resulting from the emotional impact of viewing the victims. State v. Gaskin, 412 So.2d 1007 (La.1982). The photographs are all close-up shots of wounds. The trial judge expressed that it had reviewed the photographs and found them to be without prejudice. The trial judge's conclusion was correct. This assignment of error is without merit.
Assignment of error No. 14: The Defendant requests this court to review this case for errors patent.
Defendant's final assignment is a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.), modified on other grounds, 624 So.2d 1208 (La.1993).
We have examined the record for error patent, La.C.Cr.P. art. 920(2), and have found none.

*97 CONCLUSION
For the foregoing reasons, the convictions and sentences of Defendant Joe Lee Jackson are affirmed.
AFFIRMED.