973 So.2d 168 (2007)
STATE of Louisiana, Appellee
v.
Rodney L. ROSS, Appellant.
No. 42,687-KA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 2007.
*170 Peggy J. Sullivan, Monroe, for Appellant.
Rodney L. Ross, Pro Se.
Paul J. Carmouche, District Attorney, Tommy J. Johnson, John Ford McWilliams, Jr., Dhu Thompson, William Jacob Edwards, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
CARAWAY, J.
The defendant, Rodney L. Ross, was convicted of second degree murder. He was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, questioning the sufficiency of the evidence and the admission of certain evidence at trial. For the following reasons, the conviction and sentence are affirmed.

Facts
The incident occurred during the evening of January 27, 2006, when the defendant fired two gunshots at the victim, Jackie Ray Morris, killing him. Larshandra Davenport, the victim's sister, resided in the home where the shooting occurred. Davenport and Tawanna Jackson were trying to obtain Ecstasy, a Schedule I Controlled Dangerous Substance.[1] Jackson called defendant and asked him to deliver the contraband to Davenport's house.
Ross arrived at the house and both women went outside to speak with him and complete the buy. Jackson gave the defendant $40 ($10/pilp and went back inside. Ross headed back to his car, parked in front of the house, and yelled back that Jackson owed more money, demanding that she come back outside. Ross contended he had paid $15 each for the pills, and he needed twenty more dollars.
Jackson went back outside and, at some point, Davenport went into the house. While Jackson and Ross were outside, Jackson's boyfriend, Jackie Morris, came onto the porch. He told Jackson not to pay $15/pill because he could buy them elsewhere for $10 each. Jackson gave the pills back to Ross, and Ross gave her the money back. Thereafter, an argument occurred between Ross and Morris.
The argument consisted of a verbal altercation, and there was no physical contact between defendant and the victim. Morris stood on the porch, at the front door, and the defendant remained in the front yard. No one saw Morris in possession of a weapon or heard him threaten the defendant.
As Morris turned around to re-enter the house, Ross drew a 9mm handgun and fired multiple shots at him. Two of the bullets hit Morris' back. Three eyewitnesses testified that they saw Ross shoot Morris in the back, and another two witnesses testified they saw defendant holding a gun after Morris was shot. Another occupant of the house fired several shots from a sawed-off shotgun as Ross fled.
After investigating, police obtained an arrest warrant for the defendant. They apprehended. Ross and took him into custody after a brief stand-off. When questioned *171 concerning the whereabouts of the 9mm handgun, the defendant admitted firing the gun, but said he dropped it.
The crime scene investigation yielded four 9mm shell casings from the front yard, three 9mm hollow-point bullets, and several shotgun shells near the street. Richard Beighley, a firearms expert with the Northwest Louisiana Criminalistics Laboratory, tested the bullet recovered from the victim. Based on the bullets and the nature of Morris' wounds, Beighley. concluded that the bullet from Morris' body was fired from a 9mm handgun, not the shotgun. He also concluded that all the 9mm casings and bullets were fired from the same handgun.
Subsequently, the defendant was, charged with second degree murder. He did not testify at trial, and other than cross-examining the state's witnesses, the defense did not present any additional witnesses. A jury found defendant guilty as charged by an 11-1 vote, rejecting the assertion that the defendant shot Morris under sudden passion or heat of blood. The district court imposed the mandatory life sentence at hard labor without benefit of parole, probation or suspension of sentence. Defendant appeals.

Discussion
Ross argues that the evidence presented at trial was not sufficient to convict him of the second degree murder of Jackie Morris, and that sufficient provocation existed to negate the element of specific intent to kill. He asserts that at most, the evidence supports a manslaughter conviction rather than a conviction for second degree murder, because he believed Morris was going back inside the house to retrieve a weapon.
When sufficiency of the evidence and one or more trial errors are raised as issues on appeal, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct, 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could now reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency claim, as set forth in Jackson v. Virginia, supra, is not legislatively embodied in La.C.Cr.P. art, 821. This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or re-weigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. The reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422.
Relative to the facts of this case, in order to prove the crime of second degree murder, the state's burden was to prove beyond a reasonable doubt that the defendant acted in accordance with the circumstances listed in La. R.S. 14:30.1(A), which provides in pertinent part:
A. Second degree murder is the killing of a human being:

*172 (1) When the offender has a specific intent to kill or to inflict great bodily, harm.

* * * *
The main crux of the defendant's argument is that, at most, the evidence is sufficient to support a conviction of manslaughter, rather than a conviction of second degree murder. Thus, the primary issues in this matter are whether the defendant possessed the requisite specific intent to kill or inflict great bodily harm upon Jackie Morris and whether, sufficient provocation existed to negate specific intent.[2]
Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, Lindsey v. Louisiana, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990). Specific intent can be formed in, an instant. State v. Harris, 01-2730 (La.1/19/05), 892 So.2d 1238, cert. denied, Harris v. Louisiana, 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005);, State v. Cousan, 94-2503 (La.11/25/96), 684 So.2d 382. Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. Specific intent may be established by circumstantial evidence alone if every reasonable hypothesis of innocence is excluded. State v. Cousan, supra. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Hill, 42,025 (La. App.2d Cir.5/9/07), 956 So.2d 758; State v. Jasper, 28,187 (La.App.2d Cir.6/26/96), 677 So.2d 553, writ denied, 96-1897 (La.2/21/97), 688 So.2d 521.
The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Dooley, 38,763 (La.App.2d Cir.9/22/04), 882 So.2d 731, writ denied, 04-2645 (La.2/18/05), 896 So.2d 30; State v. Brooks, 36,855 (La.App.2d Cir.3/5/03), 839 So.2d 1075, writ denied, 03-0974 (La.11/7/03), 85.7 So.2d 517.
Manslaughter is defined, in relevant part, as a "homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31(A)(1). A defendant is required to prove by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" for a verdict of manslaughter to be appropriate. State v. Robinson, 32,794 (La.App.2d Cir.3/1/00), 754 So.2d 311, writ denied, 00-0989 (La.3/23/01), 787 So.2d 1008. In addition, provocation and time for cooling are questions for the jury to be determined under the standard of the average or ordinary person, one with ordinary self-control. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, cert. denied, ___ U.S. ___, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007); State v. Deal, 00-0434 (La.11/28/01), 802 So.2d 1254, 1260, cert. denied, Deal v. Louisiana, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002). "If a *173 man unreasonably permits his impulse and passion to obscure his judgment, he will be fully responsible for the consequences of his act" State v. Leger, supra (quoting Reporter's Comment to La. R.S. 14:31).
"Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986).
After reviewing the record in the case, we find the evidence is sufficient to support the defendant's conviction for second degree murder. It is undisputed that defendant pointed a loaded 9mm pistol at Morris and fired multiple shots, hitting Morris in the back twice. The crime scene investigation revealed that the gunshots were all aimed toward the front door of the house where Morris was standing when he was shot.
The only issue as stated to the jury in closing argument was "whether or not this crime was committed under the heat of blood or sudden passion in this matter." With regard to provocation, the evidence indicates that the defendant and Morris were arguing over a mere $20 cash and that this occurred after the return of the contraband which was the subject of the disputed sales price. While the witnesses' testimony had some contradictions as to the exact nature of the words spoken between the two men (witnesses reported racial slurs and profanity by the victim), it is clear that Morris' utterances to the defendant were unaccompanied by threatening conduct toward him. See, State v. Mitchell, 39,202 (La.App.2d Cir.12/15/04), 889 So.2d 1257, writ denied, 05-0132 (La.4/29/05), 901 So.2d 1063 ("Mere words or gestures, however offensive or insulting, will not reduce homicide from murder to manslaughter.") Moreover, the testimony revealed a significant size disparity between the two men: Morris was "short and skinny," weighed 150 lbs. and was 5' 7" in height, while the defendant was "way bigger."[3] Even though Morris reportedly stated, as he turned to re-enter the house, "I'll be right back," there was no evidence that an imminent hostile act by the victim was even in the offing when the defendant opened fire. The jury could have reasonably concluded that Morris' conduct was not sufficient to deprive an average person of his self-control and cool reflection.
This assignment is therefore without merit.
In his second assignment, defendant argues the trial court erred in denying the motion in limine and permitting the introduction into evidence of assault rifles seized from the home of a third party at the time of Ross' arrest. Ross argues that evidence regarding the assault rifles found in the home in which he was hiding should have been excluded because such evidence was irrelevant and highly prejudicial. The defendant asserts that the rifles were admittedly not used in connection with this crime, and the state provided no evidence at trial showing that the rifles were owned by defendant or that defendant was even aware of their existence.
The police found two assault rifles, along with several magazines with ammunition, inside a bedroom of the residence where defendant was arrested. This residence was owned by Athena Gibson. Defense *174 counsel filed a motion in limine seeking to exclude evidence regarding the assault rifles (among other items) because such evidence was irrelevant and unduly prejudicial. It is undisputed that these assault rifles were not used in this particular crime. The 9mm handgun that defendant used to shoot Morris was never located.
During the hearing on the motion in limine, the state argued that the presence of the assault rifles was relevant to defendant's knowledge of his guilt because, unlike the assault rifles which were not hidden, defendant apparently disposed of the 9mm handgun he used to shoot Morris. The trial court denied the motion for the reasons urged by the state.
At trial, Shreveport Police Department Officer Chad Denham testified that he was aware that two assault rifles were found. The jury also heard the following testimony through Shreveport Police Detective Jeff Brown:
Q: And were any handguns located in the residence [where defendant was arrested]?
A: No, sir.
Q: But were there in fact guns present at that location?
A: Yes, sir.
Q: And can you describe to the ladies and gentlemen of the jury what type of guns were present at that location?
A: There were two rifles located in one of the bedrooms of the residence.
Q: Okay. And can you describe what type of rifles they were?
A: They were what I call assault rifles with extended, large capacity magazines.
Q: Let me show you what the state has marked as exhibit S-60 and exhibit S-61 [photographs of the rifles] and ask you if you can identify these exhibits.
A: This is one of the rifles. It was located in one of the rear bedrooms of the residence.
Q: And for the record, that's S-60. And S-61?
A: This is another rifle. This one was in a gun case that when closed has a bunch of pockets on the outside of it, and hadI forget how many magazingsseveral magazines with ammunition in them. And this one has a tactical scope on the top for what law enforcement and military would use for close-quarter battle.
Q: So there was no effort, apparently, to hide these two rifles inside the residence?
A: No, sir.
The state did not elicit any further testimony or evidence concerning the assault rifles.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
A trial judge is vested with wide discretion in determining the relevancy of evidence; her ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981); State v. Jackson, 30,473 (La.App.2d Cir.5/13/98), 714 So.2d 87, writ denied, 98-1778 (La.11/6/98), 727 So.2d 444.
Considering the facts and circumstances of the instant case, and especially *175 the state's failure to establish at trial that the assault rifles were owned by defendant or in his possession (actual or constructive), there was minimal probative value in the testimony concerning the rifles. However, assuming defendant owned the rifles or was at least aware of their presence, which was circumstantially indicated, the fact that defendant made no effort to hide or otherwise dispose of them is probative of whether defendant acted in self-defense (which was still at issue at the time the motion in limine was presented). See, State v. Mims, 97-1500 (La.App. 4th Cir.6/21/00), 769 So.2d 44, writs denied, 00-2255 (La.6/22/01), 794 So.2d 781, and 00-2270 (La.6/22/01), 794 So.2d 782; State v. Wallace, 612 So.2d 183 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1253 (La. 1993). If the defendant shot Morris in self-defense, it would be reasonable to assume that he would have notified police or at least preserved and not lost the evidence. Instead, the defendant fled the scene and effectively disposed of the 9mm handgun.
Moreover, any abuse of the trial court's discretion in this evidentiary ruling was harmless beyond a reasonable doubt.[4] It is clear that the jury knew that the two assault rifles at issue played no role in the death of Morris. The evidence was clear that Morris was shot and killed by a 9mm handgun. Thus, the guilty verdict rendered in this case was surely unattributable to the admission of the testimony about the additional, unused assault rifles.
This assignment is without merit.

Conclusion
For the above reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Ecstasy is the street name for 3, 4methylenedioxymethamphetamine under La. R.S. 40:964.
[2] In this case, there is no contention that the defendant was engaged in the perpetration of any of the felonies enumerated in La. R.S. 14:30.1(A)(2) at the time of the offense.
[3] There is no record testimony concerning defendant's weight and height, but the jury was able to observe his relative size.
[4] Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational factfinder and asks whether beyond a reasonable doubt the error could not have contributed to the verdiet actually returned by the defendant's jury. State v. Haddad, 99-1272 (La.2/29/00), 767 So.2d 682, cert. denied, Louisiana v. Haddad, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).