968 So.2d 901 (2007)
STATE of Louisiana, Appellee
v.
Standrius WHITE, Appellant.
No. 42-725-KA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
*903 Louisiana Appellate Project, by Edward K. Bauman, Lake Charles, for Appellant.
J. Schuyler Marvin, District Attorney, Charles Smith, Charles Jacobs, John M. Lawrence, Assistant District Attorneys, for Appellee.
Before BROWN, MOORE and LOLLEY, JJ.
MOORE, J.
The defendant, Standrius White, was convicted of two counts of armed robbery with a firearm. He was sentenced to 35 years at hard labor without the benefit of parole, probation or suspension of sentence on each count to run concurrently. The defendant now appeals. We affirm the defendant's conviction. However, we vacate the defendant's sentence and remand for resentencing.

FACTS
On the night of January 31, 2006, Dr. Wayne McMahen, a local veterinarian, and his daughter M.M.[1] returned home from a ball game. M.M. went to bed, but Dr. McMahen decided to watch television. When his dog started barking, Dr. McMahen went to his back sliding glass door to let the dog out. When he opened the door, a masked individual armed with a handgun rushed inside and forced Dr. McMahen to the floor. According to Dr. McMahen, there were three masked individuals in all. While one held a gun to Dr. McMahen, the other intruders ransacked his home. Dr. McMahen was ordered to turn over his watch, wedding ring, and wallet which contained between $600 and $700. Meanwhile, one of the intruders entered M.M.'s room and demanded money. She complied with the intruder's orders and gave him between $500 and $700. The intruders fled the home, taking Dr. McMahen's truck. None of the masked intruders could be identified by the victims.
Based on information received after canvassing the streets, the Springhill Police arrested Alva Tealer. Tealer confessed to his involvement in the robbery and implicated Geoffrey Eason and the defendant. Eason left blood at the crime scene which was submitted for DNA analysis and served to make a positive identification.
In an amended bill of information, the defendant was charged with two counts of armed robbery with the use of a dangerous weapon, conspiracy to commit armed robbery, conspiracy to commit aggravated burglary, and aggravated burglary. After a jury trial, he was convicted of two counts of armed robbery with use of a firearm. He was sentenced to 35 years at hard labor on each count, without benefit of parole, probation, or suspension of sentence. Both sentences were ordered to be served concurrently. This appeal ensued.

DISCUSSION
Assignment of Error Number One (verbatim): The trial court erred as the evidence presented at trial, when viewed in a light most favorable to the prosecution, was insufficient to sustain a defendant's convictions.
The defendant argues that there is no physical evidence linking him to the crime and that he was convicted solely on the testimony of Alva Tealer. He asserts that neither his DNA nor fingerprints were recovered from the McMahen home. Moreover, the defendant argues both victims *904 testified that they could not identify any of the intruders. In the event that this court finds no error in the jury's credibility determination, the defendant urges that this court should conclude that there was insufficient evidence to convict him of armed robbery in that the evidence casts doubt as to whether any intruder was armed with a weapon.
The state presented evidence consisting of the testimony of both victims, physical evidence and DNA analysis identifying co-defendant Geoffrey Eason as one of the perpetrators, and testimony from co-defendant Alva Tealer identifying Eason and the defendant as his accomplices. The state argues that the verdict indicated that the jury was convinced of the credibility of Alva Tealer and was instructed on how to apply the law of principals to multiple defendants in a crime.
When issues are raised on appeal both as to the sufficiency of the evidence and one or more trial errors, the reviewing court first reviews the sufficiency claim. This is because the defendant may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if the evidence is constitutionally insufficient. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard for evaluating sufficiency of the evidence is whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2 Cir.1992). This standard was legislatively adopted in La. C. Cr. P. art 821 and applies to cases involving direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983). When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. It is always the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Lee, 32,272 (La.App. 2 Cir. 8/18/99) 742 So.2d 651, writ denied, 99-2730 (La.3/17/00), 756 So.2d 326; State v. Thomas, 609 So.2d 1078 (La.App. 2 Cir. 1992), writ denied, 617 So.2d 905 (La. 1993).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2 Cir.1984). A reviewing court accords great deference to a judge or jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64; State v. Taylor, 422 So.2d 109 (La.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983). Pursuant to La. R.S. 14:24, all persons concerned in the commission *905 of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427; State v. Tolliver, 35,930 (La.App. 2 Cir. 5/8/02), 818 So.2d 310. Mere presence at the scene is not enough to "concern" an individual in the commission of the offense. State v. Pierre, supra; State v. Knowles, 392 So.2d 651(La.1980). An individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Pierre, supra; State v. Holmes, 388 So.2d 722 (La.1980).
Dr. McMahen testified that on the night in question, he arrived home from a ball game and checked in on his daughter, M.M., who was in her bedroom reading a book. After leaving her bedroom, he noticed his dog sitting near the sliding glass door and barking. Thinking that the dog wanted to go outside, Dr. McMahen cracked open the sliding door when he saw someone approaching with a pistol from the patio. He testified that when the individual rushed at him, he slammed the door and took off running. Because the door did not latch, the individual gained entry inside and ordered him to get on the floor. He testified that he was ordered to keep his head down and could not see the intruder's face. He asked the intruder what he wanted, and the intruder responded that he was there for money. He also testified that the intruder was bleeding onto the floor. Dr. McMahen further testified that at some point, he realized that there were three intruders as they were walking around his house. He stated that the intruders were all dressed in dark clothing and hoods and wore bandanas to cover their faces.
Dr. McMahen estimated that he was on the floor between 15 to 20 minutes. During that time, two of the intruders went to the back of the house searching for money. When the two intruders reappeared from the back of the house, they demanded more money. Dr. McMahen told them that he did not have any more money inside the house and requested that they take his two trucks located in his driveway. The keys to both of the trucks were inside the vehicles. A short time later, the intruders exited through the sliding door and escaped in one of his trucks. Besides his truck, his watch, wedding band, and wallet were also stolen.
M.M. also testified at trial. She stated that while she was in her room, she heard the dog scratching at the door and her dad opening the sliding door. She further testified that she heard people screaming for money and for her father to get down on the floor. She stated that she could hear everything going on and remained in her room. She testified that she heard the intruders going from room to room, opening drawers and doors. She further testified that one of the intruders opened her door and peeped into her room. She stated that she asked him what he wanted, and he responded that he was there for money. She testified that she gave him between $500 and $700, and then he left the room.
M.M. testified that she could only see the intruder's eyes because he wore a handkerchief around part of his face and a hood on his head. She also stated that she did not see a weapon on the intruder that entered her room. She testified that while she was still inside her room, she heard the door slam. Assuming that the intruders had left, she walked into the living room and saw her father lying on *906 the floor with three males standing nearby. She stated that two of the males had guns and all three had their faces covered.
Ronnie Coleman, chief of police for the city of Springhill, testified that he interviewed the victims and collected blood evidence at the scene. He also stated that based on information obtained from canvassing the streets, Alva Tealer began to emerge as a suspect in the case. Tealer was brought in for questioning wherein he confessed to the crime. Officer Coleman testified that he continued to look for the other parties involved in the incident, namely Geoffrey Eason and the defendant. Eason and the defendant were interviewed, and both parties denied any knowledge or involvement in the matter.
Officer Coleman also testified regarding a recorded conversation between Geoffrey Eason and the defendant. The conversation took place while Eason and the defendant were left alone in another officer's patrol car. After the tape was authenticated, it was played for the jury. During the recording, someone is heard saying "remember when they slammed my hand in the door . . . he don't even know he slammed my hand. . . . they just know somebody got cut . . ." Officer Ronnie Coleman testified that he was not certain if the person that made the statement on the tape was Eason or the defendant.
Pat Wojkiewicz, director of the North Louisiana Crime Laboratory, testified that a DNA analysis was performed on the blood found on the victim's living room floor, and DNA profile that was developed was consistent with the DNA profile of Geoffrey Eason.
Alva Tealer pled guilty to armed robbery as a result of his participation in the incident at the McMahen residence and is presently serving a ten-year hard labor sentence. Tealer testified that on the night in question, Geoffrey Eason came to his house and asked him for a gun because he needed to find a quick money scheme. Tealer told Eason that he did not have a gun but agreed to go with Eason. Tealer testified that the defendant came upon the scene shortly thereafter and also agreed to participate in a robbery. Tealer testified that he went home to get his bandana and met up with Eason and the defendant later on. He stated that he was wearing all black, and that they all were wearing hooded sweatshirts. He further testified that Eason had a gun. He testified that they all walked to North Acres and chose the McMahen residence because the lights were off and they assumed no one was home. He stated that they entered the residence through a sliding door and Eason held Dr. McMahen at gunpoint. Tealer testified that they escaped in Dr. McMahen's truck. Tealer did not recall Eason being cut and bleeding. He also stated that he did not see the defendant with a gun.
The record contains sufficient evidence to support the defendant's conviction in this case. The defendant was implicated by Tealer's testimony and the tape recording. In the tape recording of Eason and the defendant, Eason can be heard saying "remember when they slammed my hand in the door . . ." Based on that conversation, it was reasonable for the jury to conclude that the defendant was present during the commission of the crime.
Although it is unclear from the evidence whether the defendant actually held a firearm during the commission of the crime, the jury nonetheless concluded that he was guilty of the offense because he acted as a principal. The state may prove a defendant guilty of armed robbery by showing that he served as a principal to the crime. La. R.S. 14:24; State v. Durden, 36,842 (La.App. 2 Cir. 4/9/03), 842 *907 So.2d 1244; State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622; State v. Smith, 513 So.2d 438 (La.App. 2 Cir.1987). Under this theory, the defendant need not actually take anything or have personally held a weapon to be guilty of armed robbery. Durden, supra; Allen, supra, citing, State v. Dominick, 354 So.2d 1316 (La.1978). A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. Durden, supra; State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981). The jury in this instance concluded that the defendant knowingly participated in the planning and execution of an armed robbery with the use of a firearm. Thus, when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of armed robbery with a firearm beyond a reasonable doubt.
This assignment is therefore without merit.
Assignment of Error Number Two (verbatim): The trial court erred in failing to recuse itself on the defendant's Motion to Recuse, and the judge ad hoc erred in denying the motion.
The defendant argues that because the victim, Dr. Wayne McMahen, was a former neighbor and friend of the judge presiding over his trial, the judge ad hoc should have granted the defendant's motion to recuse in order to prevent the appearance of impropriety. The defendant asserts that on a hearing on the motion to recuse, it was determined that the trial judge and the victims lived three houses apart in the town of Springhill, Louisiana, Dr. McMahen was the trial judge's veterinarian for ten years, and that Dr. McMahen and the trial judge were good friends.
The state argues at a hearing on the motion to recuse the trial judge, the trial judge stated that the allegations made in the motion would not affect him in conducting the trial in a fair and impartial manner. The state further argues that the defense called no other witnesses nor presented any other reasons for recusal, and thus, failed to meet its burden of proving that the trial judge was biased or unable to conduct a fair and impartial trial in accordance with La. C. Cr. P. art 671.
La. C. Cr. P. art 671 provides, in pertinent part:
In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;. . . .
(6) Would be unable, for any other reason, to conduct a fair and impartial trial.
A trial judge is presumed to be impartial, and the burden is on the defendant to prove otherwise. State v. Dooley, 38,763 (La.App. 2 Cir. 9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30. In order to obtain a recusation based on bias, prejudice, and personal interest, the party seeking the recusation must establish grounds of a substantial nature based on more than conclusory allegations. State v. Chatman, 37,523 (La.App. 2 Cir. 9/24/03), 855 So.2d 875, writ denied, 2003-2821 (La.2/13/04), 867 So.2d 685. La. C. Cr. P. art. 671 does not require the recusal of a trial judge simply on the basis that the trial judge knew the victim's family. State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, writ denied, XXXX-XXXX (La.1/9/98), 705 So.2d 1097.
*908 In State v. Gatti, 39,833 (La.App. 2 Cir. 10/13/05), 914 So.2d 74, writ denied, 2005-2394 (La.4/17/06), 926 So.2d 511, the court considered whether the trial judge's recusal was required where a personal friendship existed between the judge and the victims. The court held that because there was no evidence that the judge's personal friendship with the victims would have caused the court to reach any conclusion based on bias, prejudice or personal interest, recusal was not warranted. In the present case, Judge Robinson testified at the recusal hearing that while he lived in Springhill, he and Dr. McMahen developed a friendship that lasted between five to ten years. Moreover, he testified that they often frequented each other's homes and socialized together. However, Judge Robinson stated that their contact ceased once he moved from Springhill to Bossier in December 2000. Based on Judge Robinson's testimony, it does not appear that the defendant in the present case was entitled to the recusal of the trial judge because he failed to produce evidence that the trial judge's prior relationship with the victim would result in bias or prejudice.
This assignment is therefore without merit.
Error Patent:
After review we note that the trial court did not specify what portion, if any, of the defendant's 35-year hard labor sentence without benefits was imposed under La. R.S. 14:64.3, which adds a five year-sentence without benefits to be served consecutive to the sentence imposed for armed robbery when the dangerous weapon used was a firearm. By Act 208, 2006, which became effective on June 2, 2006, the legislature amended La. R.S. 14:64.3 adding the term "hard labor" to the sentencing clause of the statute. However, at the time the offense was committed in this case, January 31, 2006, La. R.S. 14:64.3 did not have the words "hard labor" in the sentencing clause. The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, XXXX-XXXX, 820 So.2d 518 (La.6/21/02).
In State v. King, XXXX-XXXX (La.10/16/07), ___ So.2d ___, 2007 WL 2994592, the trial court sentenced the defendant to 198 years at hard labor on a conviction of armed robbery as a second felony offender under La. R.S. 15:529.1 and then added a five-year sentence at hard labor under La. R.S. 14:64.3. (Emphasis ours). This court affirmed the conviction and 198-year sentence, but deleted the five-year consecutive sentence.[2] The supreme court granted a writ and vacated our judgment deleting the five-year consecutive sentence, but it amended the additional five-year sentence at hard labor, noting that, at the time of the commission of the crime, La. R.S. 14:64.3 did not include the proviso "at hard labor." Accordingly, it amended the sentence to reflect that 198 years were to be served at hard labor, followed by an additional five-year term to be served consecutively.
In this case, unlike State v. King, supra, the absence of a specification that the defendant's sentences include a term or terms under La. R.S. 14:64.3 renders the defendant's sentence indeterminate. State v. Birch, 41,979 (La.App. 2 Cir. 5/9/07), 956 So.2d 793; State v. Weaver, 38,322 (La. App. 2 Cir. 5/12/04), 873 So.2d 909; State v. Price, 04-812 (La.App. 5 Cir. 3/1/05), 909 So.2d 612. Therefore, we vacate the sentence *909 and remand for resentencing according to law for clarification of whether the defendant's sentence includes any additional punishment under La. R.S. 14:64.3.

CONCLUSION
For the foregoing reasons, the defendant's convictions are affirmed. We vacate the sentence imposed and remand to the trial court for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
BROWN, C.J., concurs in part, dissents in part.
BROWN, C.J., concurring in part, dissenting in part.
I agree that defendant's convictions of two counts of armed robbery with use of a firearm should be affirmed; however, I disagree with vacating the sentences imposed and remanding for resentencing.
Defendant's sentence was clearly imposed pursuant to La. R.S. 14:64.3. He was charged under La. R.S. 14:64.3 and was found guilty under the same statute. La. R.S. 14:64 defines the crime of armed robbery and provides a sentence of imprisonment at hard labor for not less than ten and not more than ninety-nine years without benefits. This statute was supplemented in 1999 by La. R.S. 14:64.3 to tack on an additional five years when the weapon used in the commission of armed robbery is a firearm. This additional five years is to be served consecutively and "shall be" imposed. Obviously, in the instant case the thirty-five year hard labor sentence would have included the mandatory additional five years, that is, thirty plus five. This is not an indeterminate sentence. I further note that the state neither questioned this sentence nor appealed this issue.
When the offenses in this case were committed, the statute read "When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence." The five years imprisonment provided for in La. R.S. 14:64.3 was a mandatory addition to the armed robbery sentence. As such, it would logically follow that it would be at hard labor. However, State v. King, supra, decided by the Louisiana Supreme Court on October 16, 2007, appears to indicate that King's two 30-year sentences running concurrently would be served at hard labor in DOC (La. R.S. 15:824 C) and then the two additional consecutive five-year sentences would be served locally in custody of the sheriff (La. R.S. 15:565)  an incongruous result.
NOTES
[1] The initials of the victims are used because of confidentiality requirements applicable to the instant case under La. R.S. 46:1844(W).
[2] State v. King, 41,083 (La.App. 2 Cir. 6/28/06),935 So.2d 354, writ granted, XXXX-XXXX (La.4/27/07), 955 So.2d 670.