987 So.2d 330 (2008)
STATE of Louisiana, Appellee
v.
Broderick Donnell HOWARD, Appellant.
No. 43,227-KA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 2008.
*332 William J. Franklin, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Jr., Brady D. O'Callaghan, Jason T. Brown, Assistant District Attorneys, for Appellees.
Before WILLIAMS, MOORE and LOLLEY, JJ.
WILLIAMS, J.
The defendant, Broderick Donnell Howard, was charged by bill of information with armed robbery with a firearm, in violation of LSA-R.S. 14:64 and 14:64.3. Following a trial, a jury found the defendant guilty of armed robbery. He was sentenced to serve 99 years in prison at hard labor, without benefit of probation, parole or suspension of sentence. For the reasons that follow, we affirm the defendant's conviction and sentence.

FACTS
On June 9, 2006, at approximately 11:00 a.m., Wiley Fountain, a 70-year-old man, was leaving his apartment in the Jefferson Apartment complex in Shreveport, Louisiana. Mr. Fountain planned to walk to a nearby detox clinic where he worked as a volunteer. As he began to walk down the street, Mr. Fountain was approached by Darren Gray ("Gray"). Gray was brandishing a firearm and told Mr. Fountain to step behind a building. Mr. Fountain saw another man, who was later identified as the defendant, standing alongside the building. Gray demanded money from *333 Mr. Fountain, and when Mr. Fountain told Gray he didn't have any money, Gray demanded his cell phone. Mr. Fountain threw the phone towards Gray and began walking back to his apartment complex. As he left, Mr. Fountain told Gray if he was going to shoot him, he would have to shoot him in the back. One of Mr. Fountain's neighbors witnessed the robbery and called 9-1-1, giving a description of the two men. The defendant was described as a man wearing a pair of bright yellow shorts or pants and a white T-shirt. Gray was wearing a white T-shirt and blue jeans.
Police officers canvassing the area located the defendant a few blocks from the crime scene wearing the clothes described by the victim and his neighbor. Mr. Fountain was driven to the location where the defendant was apprehended and made an identification of the defendant by the clothing he was wearing. The defendant and Gray were arrested. Gray provided the authorities with a false name and was initially released. However, later that evening, Gray was arrested as he attempted to park a stolen vehicle he was driving.[1] During his interrogation, Gray admitted his involvement in the armed robbery of Mr. Fountain and implicated the defendant in the crime.
Gray and the defendant were charged with armed robbery with a firearm, in violation of LSA-R.S. 14:64 and 14:64.3.[2] Following a trial, a jury found the defendant guilty of armed robbery. The trial court denied the defendant's motions for new trial and post-verdict judgment of acquittal. The defendant was sentenced to serve 99 years in prison at hard labor, without benefit of probation, parole or suspension of sentence. The trial court denied the defendant's motion to reconsider sentence. The defendant appeals his conviction and sentence.

DISCUSSION

Sufficiency of Evidence
The defendant contends the evidence was insufficient to support his conviction for armed robbery. He argues that the state failed to prove beyond a reasonable doubt that he participated in the armed robbery of Mr. Fountain.
The question of sufficiency of evidence is properly raised by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App. 2d Cir.8/18/99), 746 So.2d 49, writ denied, 99-2960 (La.5/5/00), 760 So.2d 1190. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La. App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 *334 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64; State v. Taylor, 422 So.2d 109 (La.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1803, 76 L.Ed.2d 367 (1983); State v. White, 42,725 (La.App. 2d Cir.10/24/07), 968 So.2d 901. The state may prove a defendant guilty of armed robbery by showing that he served as a principal to the crime. LSA-R.S. 14:24; State v. White, supra; State v. Durden, 36,842 (La.App. 2d Cir.4/9/03), 842 So.2d 1244, writ denied, XXXX-XXXX (La.11/26/03), 860 So.2d 1131.[3] Under this theory, the defendant need not actually take anything or have personally held a weapon to be guilty of armed robbery. Id. A person who aids and abets another in a crime is liable just as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proved at trial. State v. Watson, 397 So.2d 1337 (La.1981), cert. denied, 454 U.S. 903, 102 S.Ct. 410, 70 L.Ed.2d 222 (1981); State v. White, supra; State v. Durden, supra.
In the instant case, Detective Mike McConnell of the Shreveport Police Department testified as the state's first witness. Det. McConnell testified that when he arrived near the scene of the robbery, the defendant and Gray had been arrested. At the instruction of Det. McConnell, Gray was taken to police headquarters for an interview, and after being Mirandized, Gray was questioned about the crime. During the interview, Gray admitted to stealing a car the day before the robbery. He stated that when the stolen vehicle ran out of gas, he needed gas money. He told the detective that he called the defendant and they planned to get money for gas. Gray also told Det. McConnell that he and the defendant were walking when they saw the victim near the railroad tracks in the vicinity of the 900 block of Louisiana. The pair confronted the victim and told him to empty his pockets. The victim only had a cell phone which the defendant told Gray to take. The victim threw the cell phone to Gray and walked back towards the Jefferson apartment complex while the defendant and Gray went in the opposite direction.[4]
Detective Christopher Yarborough of the Shreveport Police Department testified with regard to his involvement in the investigation of the armed robbery. Det. Yarborough stated that when he attempted to question the defendant, the defendant refused to give a statement. However, Gray provided a statement in which he admitted his involvement in the robbery of Mr. Fountain, as well as admitted his involvement *335 in a carjacking the day before. Det. Yarborough recalled that although Gray did not identify the defendant by name, he identified him as his friend who was involved in the robbery by the clothes he was wearing and his appearance. In court, Det. Yarborough identified State exhibit 2 as the clothing the defendant was wearing when he was arrested. The clothing included "very bright yellow pair of shorts" and a white T-shirt. The clothing matched the description of the clothes the robbery suspect was wearing.[5]
Shreveport Police Officer Richard Turpin testified with regard to his involvement in the defendant's arrest after the robbery. Officer Turpin was patrolling in the downtown area near the crime scene when the description of the robbery suspects was broadcast over the police radio. Within minutes of the call, Officer Turpin began circulating in the area in search of the suspects when he spotted someone matching one of the descriptions a few blocks from the crime scene. The suspect was wearing yellow shorts and a white T-shirt and identified himself as Broderick Howard. Officer Turpin detained the defendant for the victim to make an identification. In court, Officer Turpin identified the defendant as the person he apprehended soon after the robbery.
Gray testified that he pled guilty to the armed robbery of Mr. Fountain. Gray stated that he knew the defendant as Donny or Donny Boy. Gray testified that on the morning that Mr. Fountain was robbed, Gray met up with the defendant and he asked the defendant to walk with him to a store. Gray testified that he saw the victim and "did what I did." Gray recalled asking the victim if he had anything and the victim replied he did not have anything. Gray stated he attempted to get the victim off the street into an alley on the side of a building. He stated that at the time he confronted the victim, he had pulled the gun he was carrying. The victim threw his cell phone to Gray. At that time, only the defendant, Gray and the victim were on the street. When questioned about the defendant's whereabouts during the robbery, Gray stated, "Donny was still just standing there. Like I say, he really ain't have no knowledge of what I was doing until I did it." Gray went on to admit that he did not want to testify against his "boy." In further questioning, Gray stated that the victim did not enter the alley, but stood near the street "like he was scared and just threw me his phone." After throwing the phone, the victim walked away. Gray further stated that he and the defendant walked off together but split up as they came to the street.
When questioned with regard to the statement he gave to police officers, in which he implicated the defendant as his accomplice, Gray testified that he did not understand his rights at the time he gave the statement, despite the fact that he said he did at the time of the statement. Gray acknowledged that he told police officers that he committed the armed robbery and also told them who was with him at the time. Upon tendering his plea of guilty to armed robbery, Gray knew he would have to testify at the defendant's trial. Gray denied remembering the details of the crime that were put on the record during his guilty plea hearing. Gray maintained *336 that he was the one who had the gun and that he committed the crime. Gray stated he did not understand the entirety of the proceedings when he acknowledged that the defendant was a participant in the crime.
When asked if he had previously implicated the defendant in the crime, Gray responded:
No sir. I said yes, but it wasn't like that. There was a lot of stuff they was telling me, you know what I'm saying, I ain't understand. Like I'm just sitting up talking now, I still don't understand. I don't want to be here, and I don't want to do this. Like I said, he didn't do nothing. I'm the one that robbed.
Gray also testified that he acted alone in committing the crime, despite his prior statements to the contrary. However, Gray admitted that if he had received money from the robbery, he "probably" would have split it with the defendant.
Gray's recorded statement taken after his arrest was played for the jury. In the statement, Gray indicated that he needed gas money and told a friend (the defendant) who was identified as the "chubby guy in the yellow shorts" to come with him (the defendant was not specifically mentioned by name). Gray saw the victim walking and asked him "what you got" before pulling the gun. The victim said he didn't have anything. Gray asked the victim if he should check his (victim's) pockets. The victim said, "No," and Gray was ready to let him go when the defendant told Gray to take the victim's cell phone. The victim threw the cell phone and then they walked away. Upon further questioning, Gray made it clear that he was not interested in testifying in court, but he admitted that he told the truth in his prior statements to police.
The victim, Mr. Fountain, testified that, when he was robbed, he had just left his home to go to the Steps Detox Clinic where he worked as a volunteer. Mr. Fountain stated he was walking when he came in contact with two men. Mr. Fountain testified that he saw a short, slender-built man wearing jeans and a white T-shirt, who engaged him in a conversation about the rescue mission. Mr. Fountain continued to walk when the man told him to step behind an abandoned building where another man was standing. Mr. Fountain testified, "The one  the littlest one (Gray) was in the front. Other one, I don't know what he was doing if he was relieving himself or what beside the building, but he stopped." Mr. Fountain stated he refused to comply with the demand to step behind the building because he was fearful that he would be shot or beaten.
Mr. Fountain stated that he turned to walk back to his apartment building when the first man (Gray) told him to give him the money. Mr. Fountain responded he did not have any money, then Gray demanded his cell phone. Mr. Fountain threw the phone to Gray and continued to walk away from the robbers. As he walked away, Mr. Fountain told the robbers if they intended to shoot him they would have to shoot him in the back. Mr. Fountain stated that the second man wore "some loud color pants that was yellow." Once Mr. Fountain placed some distance between himself and the robbers, Mr. Fountain looked back to see the man wearing the yellow pants walking up a hill. He did not see the other man.
Once back at the Jefferson Apartments, Mr. Fountain waited for the police to arrive. Mr. Fountain gave police a description of both of the robbers, confirming information that had already been provided to the police by a witness who had seen the robbery and called 9-1-1. When the robber wearing the yellow pants was apprehended by police shortly thereafter, *337 Mr. Fountain was driven to the location where the defendant was being held for an identification. Mr. Fountain testified he identified the man by his pants.
When viewed in the light most favorable to the prosecution, we find that the evidence supports the jury's finding that the defendant was guilty, beyond a reasonable doubt, of the armed robbery of Mr. Fountain. The defendant was present during the robbery and was aware that Mr. Fountain was being robbed. Although Gray denied understanding his rights at the time he made the statement to the detectives following his arrest, he admitted during his testimony that he told the officers the truth. Gray stated to the detectives that he and the defendant had planned to get money for gas. He also stated that when they discovered that Mr. Fountain only had a cell phone, it was the defendant who told him to take it. Gray also admitted that had he obtained money during the robbery, he "probably" would have split it with the defendant. Accordingly, we find that the evidence was sufficient for the jury to conclude that the defendant was a principal in the armed robbery of Mr. Fountain.
This assignment lacks merit.

Excessiveness
The defendant contends the sentence imposed is excessive for this offender and this offense. The defendant argues that he is not the most egregious offender; therefore, the maximum sentence should not have been imposed. He also argues that the trial court improperly considered his disciplinary history while incarcerated for this offense and failed to adequately consider the factors set forth in LSA-C.Cr.P. art. 894.1.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, XXXX-XXXX (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.9/28/07), 964 So.2d 351; State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Woods, 41,420 (La.App. 2d Cir.11/1/06), 942 So.2d 658; State v. *338 Brisco, 33,179 (La.App. 2d Cir.4/5/00), 756 So.2d 644, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 749; State v. Grissom, 29,718 (La.App. 2d Cir.8/20/97), 700 So.2d 541. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Russell, 40,526 (La.App. 2d Cir.1/27/05), 920 So.2d 866, writ denied, XXXX-XXXX (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App. 2d Cir.5/9/07), 956 So.2d 779. Factors to be considered may include jail disciplinary records. State v. Russell, supra.
There is no requirement that codefendants be treated equally by the sentencing judge. State v. Rogers, 405 So.2d 829 (La.1981); State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The disparity of sentences between codefendants is only a factor to be considered along with all other appropriate considerations in evaluating a contention that a sentence is excessive. State v. Quimby, 419 So.2d 951 (La.1982); State v. Jackson, 30,473 (La. App. 2d Cir.5/13/98), 714 So.2d 87, writ denied, XXXX-XXXX (La.11/6/98), 727 So.2d 444.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379; State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:64(B).
In the instant case, during the sentencing hearing, the trial court noted that the defendant was a 35-year-old third felony offender with prior convictions for possession of a Schedule II controlled dangerous substance (drug not specified), as well as unauthorized entry of an inhabited dwelling. The court reviewed the facts of the crime and the trial testimony for the record. In determining the defendant's sentence, the trial court indicated that it considered the defendant's disciplinary reports from CCC, which reflected 49 major reports (violations included threatening deputies, frequent use of profanity, possession of contraband and publicly masturbating). The trial court stated:
My viewpoint has always been, and I have said, that anybody who can't behave at Caddo Correctional Center where they are literally under lock and key with deputy sheriffs surrounding them twenty-four hours a day with direct supervision, if they can't behave at Caddo Correctional Center, how could I possibly expect that they would be safe to return to the community. It would make no sense.
*339 In reviewing the factors of LSA-C.Cr.P. art. 894.1, the trial court stated that the defendant is in need of correctional treatment that can best be provided in a custodial environment; that a lesser sentence would deprecate the seriousness of the offense; that the crime exhibited deliberate cruelty to the elderly victim; and that the defendant knew or should have known that the victim would be particularly vulnerable. In considering the fact that a gun was used, the trial court opined that there was a risk of death and great bodily harm and there were no grounds to justify the defendant's conduct. The court also opined that the defendant would be unable to respond affirmatively to probationary circumstances. Just before pronouncing the defendant's sentence, the trial court indicated that no mitigating circumstances were found.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, XXXX-XXXX (La.12/13/04), 893 So.2d 7; State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330; State v. Hardy, 39,233 (La.App. 2d Cir.1/26/05), 892 So.2d 710. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. Id.
Considering the defendant's criminal history and the fact that this is his third felony offense, we find that the trial court did not abuse its discretion in sentencing the defendant to the maximum sentence. The court considered the defendant's criminal history, as well as his continued lawless behavior, even while incarcerated for the instant offense. There is no showing that the trial court abused its wide discretion in sentencing this defendant. It is not this court's role to determine whether another sentence would be more appropriate, but to determine whether the trial court abused its discretion. In considering this defendant and the charged offense, this sentence does not constitute a needless infliction of pain and suffering, nor does this sentence shock the sense of justice.
This assignment lacks merit.

CONCLUSION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Gray had carjacked another victim the day before the robbery of Mr. Fountain.
[2] Gray pled guilty to armed robbery and an additional charge of armed robbery was dismissed. Gray was sentenced to 12 years.
[3] Pursuant to LSA-R.S. 14:24, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
[4] Although Gray implicated the defendant in his oral statement, in his written statement, he admitted his involvement in the robbery, but he did not implicate anyone else in the crime.
[5] Lieutenant Charles Law, employed by the Caddo Correctional Center ("CCC") as a supervisor in booking and property, testified with regard to the procedure used when an inmate is booked into CCC. Lt. Law testified that the defendant's clothing was taken and inventoried when he was booked at the time of his arrest. In accordance with regular policy, the clothing was placed in a sealed plastic bag which was not opened prior to being presented in court.